**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| **AULDRICK ANSELM,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No.** |
| **v.** ) | **24-12729-FDS** |
| ) | |
| **CARIBBEAN FOUNDATION OF** ) | |
| **BOSTON, INC.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM AND ORDER ON**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**SAYLOR, J.**

This is an employment discrimination case. The complaint filed by plaintiff Auldrick Anselm asserts five claims: (1) race discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; (2) disability discrimination and retaliation, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101; (3) disability discrimination and retaliation in violation of the Massachusetts Fair Employment Practices Act ("FEPA"), Mass. Gen. Laws ch. 151B § 1; (4) violation of the Massachusetts Paid Family and Medical Leave Act ("PFMLA"), Mass. Gen. Laws ch. 175M; and (5) violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601.

Defendant Caribbean Foundation of Boston, Inc. ("CFOB") contends that Anselm was terminated for the non-discriminatory and non-retaliatory reason of job abandonment.

CFOB has moved for summary judgment. For the following reasons, that motion will be denied.

I.      **Background**

The following facts are undisputed unless otherwise noted.

A.      **Factual Background**

Auldrick Anselm is the former Chief Financial Officer of CFOB.  (Pl.'s Statement of Undisputed Facts ("PSOUF") ¶ 3, Dkt. No. 37).  He is African-American.  (*Id.* ¶ 1).

CFOB is a nonprofit organization based in Boston that provides home care and in-home assistance for elderly and disabled people in the local community.  (Aff. of Beulah Providence ¶ 7, Dkt. No. 35).

Anselm began working for CFOB on May 1, 1975, and was terminated on August 2, 2023.  (PSOUF ¶¶ 1, 46).  Prior to his termination, he fulfilled the normal responsibilities of a CFO.  Specifically, he oversaw all financial operations and managed the payroll.  (*Id.* ¶ 3).  At the time of his termination, he was 77 years old.  (*Id.* ¶ 5).

Anselm was hired to work at CFOB by his cousin, Beulah Providence, an African-American female and CFOB's Executive Director.  (*Id.* ¶¶ 6-7).  According to Anselm, after he suffered a seizure in 2021, Providence repeatedly asked him when he planned to retire.  (*Id.* ¶¶ 9-10).  Providence also allegedly made racist remarks about Latino employees.  (*Id.* ¶ 11).  Anselm alleges that he consistently expressed vocal opposition to Providence's treatment of Latino employees.  (*Id.* ¶ 16).

On April 20, 2023, Anselm visited a doctor.  (*Id.* ¶ 19).  The doctor's notes indicate that Anselm's health was negatively impacted by the stress of his work environment.  (*Id.* ¶¶ 17, 20).  The doctor recommended that he take immediate medical leave.  (*Id.* ¶ 21).

On May 1, 2023, Anselm began medical leave.  (*Id.* ¶ 23).  Providence responded by letter on May 1, 2023, requesting his anticipated return date, and asking permission to allow Richard Gopie to access certain financial systems in Anselm's absence.  (*Id.* ¶ 24).

On May 3, 2023, Anselm responded to the letter with a doctor's note suggesting a 12-week leave period.  The letter also requested medical leave under PFMLA and FMLA.  (*Id.* ¶ 27).

On May 9, 2023, CFOB responded by letter, informing Anselm that his leave was being considered under FMLA and requesting that he submit an FMLA certification form within 15 days.  (*Id.* ¶ 28).

On May 24, 2023, Anselm sent a letter to CFOB explaining that his form might be delayed because his doctor was on vacation.  (*Id.* ¶ 29).  He also expressed his desire to apply for PFMLA and notified CFOB that the information it provided about the PFMLA in its previous letter was incorrect.  (*Id.*).

On June 1, 2023, CFOB hired Gopie as "Finance Manager."  (*Id.* ¶ 52).

On June 2, 2023, CFOB responded to Anselm by letter with an apology and providing additional information about PFMLA that also turned out to be incorrect.  (*Id.* ¶ 30).

On June 20, 2023, CFOB sent a letter to Anselm informing him that his request for FMLA coverage was denied because the certification it had requested on May 9, 2023, was not complete.  (*Id.* ¶ 33).  On June 20, 2023, Anselm sent in his FMLA certification.  (*Id.* ¶ 32).

On July 7, 2023, Anselm sent a letter to CFOB requesting to know his employment status.  (*Id.* ¶ 38).

On July 13, 2023, CFOB responded to Anselm by email.  (*Id.* ¶ 40).  According to CFOB, attached to the email was a letter explaining that Anselm's request for FMLA leave was approved but that it would expire on July 24, 2023.  (Def.'s Statement of Undisputed Facts ("DSOUF") ¶ 33, Dkt. No. 32).  In the attached letter, CFOB asked Anselm to return to work no later than July 25, 2023.  (*Id.*).  Anselm contends that the email did not include an attached letter,

leaving him in the dark about his employment status.  (PSOUF ¶ 40).

After July 7, 2023, CFOB did not receive any communications from Anselm.  (DSOUF ¶ 40).  According to CFOB, it expected Anselm to return to work on July 25, 2023.  (PSOUF ¶¶ 39, 45).  However, at a medical appointment on that same day, his doctor suggested that he extend his medical leave.  (*Id.* ¶ 45).  Mr. Anselm did not communicate with CFOB to request additional medical leave or update CFOB on his health status.  (*Id.* ¶¶ 45-51).

On August 2, 2023, CFOB terminated Anselm's employment.  (*Id.* ¶ 46).

### B.    Procedural Background

On October 28, 2024, Anselm brought this action against CFOB arising from the termination of his employment.

CFOB has moved for summary judgment on all claims, asserting that there is undisputed evidence of job abandonment.

## II.    Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)).  Summary judgment shall be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party."  *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted).  In evaluating a summary judgment motion, the court indulges all reasonable inferences in favor of the nonmoving party.  *See O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993).  When "a properly supported motion for summary judgment is made, the adverse

party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation modified). The nonmoving party may not simply "rest upon mere allegation or denials of his pleading," but must "present affirmative evidence." *Id.* at 256.

## III.    Analysis

The complaint asserts claims of discrimination and retaliation under a variety of different statutes. "Courts should exercise particular caution before granting summary judgment for employers on such issues as pretext, motive, and intent." *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 54 (1st Cir. 2000) (citing *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 167 (1st Cir. 1998)).

To survive summary judgment, the plaintiff must establish a genuine issue of material fact as to whether discrimination was the reason for his termination. *See Acevedo-Parilla v. Novartis Ex-Lax, Inc.*, 696 F.3d 128, 136-37 (1st Cir. 2012). In the absence of direct evidence, plaintiff can establish employment discrimination under the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).

In the first stage of the *McDonnell Douglas* framework, plaintiff must establish a *prima facie* case of employment discrimination. *Id.* at 802. The bar for a *prima facie* showing has been described as "modest," *Rathbun v. Autozone, Inc.*, 361 F.3d 62, 71 (1st Cir. 2004), and a "low standard," *Zapata-Matos v. Reckitt & Colman, Inc.*, 277 F.3d 40, 44 (2002). Here, plaintiff contends that he was terminated for discriminatory and retaliatory reasons. Specifically, he asserts that he defended Latino employees from race discrimination and that he personally experienced disability discrimination related to his health status and medical leave. Statements made by decisionmakers can evidence employment discrimination. *See, e.g., Kelley v. Airborne Freight Corp.*, 140 F.3d 335, 347 (1st Cir. 1998) (remark that corporation should "get rid of

some of the older mediocre managers" found sufficient to demonstrate age discrimination). Here, the allegation that Providence made racist comments about Latino employees, whom plaintiff defended, and her repeated questions about when plaintiff planned to retire, are sufficient to establish a *prima facie* showing of employment discrimination.

At the second stage, the burden of production shifts to the employer "to articulate a legitimate, non-discriminatory reason for its decisions." *Arroyo-Audifred v. Verizon Wireless, Inc.*, 527 F.3d 215, 219 (2008). Here, defendant contends that plaintiff's employment was terminated because he failed to communicate about his health status, failed to request additional medical leave, and did not show up to work after his medical leave expired.

If the employer provides a non-discriminatory reason for its decision, "the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510 (1993). The focus then shifts to "the ultimate issue: whether viewing the 'aggregate package of proof offered by the plaintiff' and taking all inferences in the plaintiff's favor, the plaintiff has raised a genuine issue of fact as to whether the termination of the plaintiff's employment was motivated by . . . discrimination." *Dominguez-Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 430-31 (2000) (quoting *Mesnick*, 950 F.2d at 824-25).

Evidence sufficient to establish a *prima facie* case, paired with evidence of pretext, can "defeat summary judgment if a rational factfinder could conclude that unlawful . . . discrimination was the actual, but-for cause of the discrimination." *Velez v. Thermo King de Puerto Rico, Inc.*, 585 F.3d 441, 452 (2009) (citing *Dominguez-Cruz*, 202 F.3d at 430 n.5). Here, there is evidence from which a jury could reasonably infer that defendant's claimed reason for terminating plaintiff's employment was pretextual and the result of discrimination. Providence allegedly made repeated comments about plaintiff's health and retirement status.

6

Providence also allegedly made racist remarks directed at Latino employees, which plaintiff consistently opposed.  Not long thereafter, plaintiff was terminated after 48 years of employment.  The close temporal proximity between these events may be interpreted as evidence of discriminatory termination.  *See Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 329 (finding that "protected conduct closely followed by adverse action may justify an inference of retaliatory motive").  Moreover, it remains a disputed fact whether plaintiff received a July 13, 2023 email attachment detailing his employment status and required return date.

In sum, a reasonable jury could find that plaintiff's termination was driven by discrimination and retaliation rather than abandonment of his position.  Summary judgment is therefore inappropriate.

## IV.    Conclusion

For the foregoing reasons, the motion of defendant Caribbean Foundation of Boston, Inc., for summary judgment is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Dated:  June 11, 2026                    United States District Judge

7